UNITED STATES *v.* LEIGH & BUTLER (No. 1052).[1]

1. "To MAKE UP."

"To make up" invariably expresses a process of aggregating or assembling different units into a composite entirety. A made-up article is one which has been composed by uniting together various parts.

2. CAST-IRON REPAIR OR REPLACEMENT PARTS.

These parts of textile machinery were made ready for immediate attachment to the machines for which they had been severally designed. They are iron castings advanced in condition as defined by paragraph 147, tariff act of 1909.—Jackson Co. *et al. v.* United States (2 Ct. Cust. Appls., 475; T. D. 32227).

United States Court of Customs Appeals, May 29, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7397 (T. D. 32872).
[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.
*Searle & Waterhouse* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTÍN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of various cast-iron repair or replacement parts for textile machinery. The importations include 3-grooved rim pulleys, flats for carding engines, 40-tooth doffer gears, lattice-shaft brackets, levers for combing machines, and other similar machine parts.

These parts were first cast in molds and subsequently were chiseled, drilled, and machined; they thereby were made ready for immediate attachment to the machines for which severally they were designed. The pieces as imported were separate, were without attachments; and did not together constitute entire machines in a knocked-down condition.

The appraiser returned the importations as manufactures of metal under paragraph 199 of the tariff act of 1909. The collector accordingly assessed duty at the rate of 45 per cent ad valorem under the provisions of that paragraph.

The importers protested against the assessment, claiming the merchandise to be dutiable as iron castings advanced in condition within paragraph 147 of the act, and therefore liable both for the primary and cumulative duties prescribed therein.

The protest was submitted to the Board of General Appraisers and was sustained, from which decision the Government now appeals.

The following is a copy of the competing paragraphs in question:

147. Cast-iron andirons, plates, stove plates, sadirons, tailors' irons, hatters' irons, and castings and vessels wholly of cast iron, eight-tenths of one cent per pound. All castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting

[1] Reported in T. D. 33517 (24 Treas. Dec., 957).

process but not made up into articles, shall pay two-tenths of one cent per pound more than the rate imposed upon the castings of iron and cast-iron plates hereinbefore provided for.

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

It thus appears that paragraph 147 imposes a primary duty upon iron castings not advanced in condition, and imposes also a cumulative duty upon such castings when advanced in condition, if "not made up into articles." If iron castings are advanced in condition to the point of being "made up into articles," they thereby are excluded from classification as castings under paragraph 147, and become dutiable as manufactures of metal under paragraph 199, above copied.

The Government contends that the description, "made up into articles," includes individual castings like those at bar, which have been finished into completed usable units.

On the other hand the importers contend that the description, "made up into articles," does not apply to detached parts like those at bar, but applies only to entireties which are usable within themselves, either as completed entities or as assembled articles.

It therefore is apparent that the decision of the present case depends upon the definition of the phrase, "made up into articles"; for if the parts in question are not made up into articles they yet remain dutiable as advanced castings under paragraph 147; whereas if they are made up into articles, they now are dutiable as manufactures of metal under paragraph 199.

The following is a copy of the definitions of the verb "to make up" given by the Standard Dictionary:

MAKE, *v.* * * *

To make up: 1. To collect into a sum, mass, or aggregate; gather together; as, to *make up* a parcel. 2. To compose as ingredients or parts; as, to *make up* a prescription. 3. To supply a deficiency in; as, to *make up* an amount. 4. To bring to a definite conclusion; settle; as, to *make up* one's mind. 5. To make good; compensate for; as, to *make up* a loss. 6. To arrange for settlement; adjust; as, to *make up* accounts; to *make up* a quarrel. 7. To fabricate, as something deceitful or untrue; as, to *make up* a story. 8. *Print.* To arrange, as lines, into columns or pages. 9. To enumerate; count. 10. To rouge, powder, or disguise the face, etc., as an actor. 11. To repair, as a hedge. 12. (obsolete) To fortify; prepare.

It thus appears that the verb "to make up" invariably expresses a process of aggregating or assembling different units into a composite entirety. Correspondingly it may be assumed that a made-up article is one which has been thus composed by uniting together various parts. This also is the meaning given by common acceptation to the term. For example, a made-up train is an assembled train composed of various cars. On the other hand a single pulley,

gear, or lever ordinarily would not be called a made-up article. This definition of the controlling term strongly tends to sustain the contention of the importers and leads to the conclusion that the term "made up into articles," appearing in paragraph 147, does not apply to separate parts like those at bar not usable of themselves and not fitted or combined into an assembled article.

The claim of the Government is that a casting may be advanced in condition up to the point of becoming a completed usable unit and nevertheless remain dutiable as an advanced casting, but that so soon as that point is reached the casting immediately loses its identity as an advanced casting and is excluded from classification as such.

In answer, however, to this claim it may be said that such a rule would tend to confusion in administration and would not accomplish any reasonable result, since under it such parts as these could be almost entirely completed abroad and thereupon imported as advanced castings. The only result would be that such parts would be imported not quite entirely completed in condition, and nevertheless be dutiable under paragraph 147. It does not seem probable that this construction was intended by Congress in the use of the disputed term.

The Government also claims that the cumulative duty imposed upon advanced castings by paragraph 147 is so small that it can not be intended to apply to parts like those at bar, which have been so greatly enhanced in value as compared with crude castings. It is contended that inasmuch as the cumulative duty is only two-tenths of 1 cent per pound, and inasmuch as castings may be greatly reduced in weight by the applied processes, the result may follow that finished parts like these may actually pay less duty upon importation than would the crude castings from which they were made. It is therefore contended that such improved parts should be held to be excluded from paragraph 147.

In answer to this contention, however, it should be noted that the Government's construction does not avoid the alleged anomaly, for according to that construction the cumulative provisions apply to such parts as these if only they are not entirely completed for use. Therefore, according even to the Government's claim, such parts almost entirely completed for use may be imported under the classification of advanced castings, which leads substantially to the same result as that of which the Government complains.

The Government furthermore claims that paragraph 147 specifically names three processes by means of which castings may be made up into articles within the legislative use of that term, viz, chiseling, drilling, and machining; and that these processes all apply to individual castings and are not used in assembling a composite article.

Therefore the Government contends that parts which are finished by those processes into usable units must be the made-up articles which are excluded from classification as advanced castings and classified as manufactures of metal.

However, it does not seem from the language of paragraph 147 that Congress intended therein to declare that the application of any one or all of those processes would constitute castings into made-up articles. On the contrary, the paragraph includes not only castings which are chiseled, drilled, or machined, but also such as are otherwise advanced in condition by processes or operations subsequent to the casting process. These subsequent operations seem to be the ones which bear the inhibition against making up the castings into articles.

The legislative and judicial history of this subject becomes important in this connection. The classification of iron castings appeared in exactly identical terms in the tariff revisions of 1883, 1890, 1894, and 1897, respectively. The following copy of the relevant paragraph of the act of 1897 will serve as a substantial copy of the corresponding paragraphs of all of the acts above named:

148. Cast-iron vessels, plates, stove-plates, andirons, sad-irons, tailors' irons, hatters' irons, and castings of iron, not specially provided for in this Act, eight-tenths of one cent per pound.

It will be observed that the foregoing paragraph imposed a duty upon iron castings without expressly prescribing whether or not the duty applied to such castings if advanced in condition subsequent to the casting process. Consequently under the acts above named the question repeatedly came before the board and the courts whether or not iron castings remained dutiable under that name if they were advanced in condition after they had left the foundry. In answer to this question the board and the courts consistently held that iron castings were complete as such as soon as the fins and scales were removed from them in the foundry, and if tool work subsequently was applied to them they thereby lost their classification as castings and became dutiable under the classification of manufactures of metal. Schlossman case (T. D. 12814); Rubber Co. case (T. D. 12920); Car Co. case (T. D. 24604); Prosser & Son case (T. D. 26478); Bromley & Sons case, Abstract 8503 (T. D. 26790); same case (154 Fed., 399); same case (156 Fed., 958); Lehigh Mfg. Co. case (153 Fed., 596).

At the tariff revision of 1909 Congress enlarged the iron-castings classification by admitting thereto castings which were advanced in condition but not made up into articles. This amendment evidently responded to the issues made in the cases above cited, and was designed to admit finished parts like these to classification as advanced castings, subject to the cumulative duty, but to exclude such parts if assembled with others into composite articles.

The foregoing conclusions are consistent with the rulings of this court in Jackson Co. *et al. v.* United States (2 Ct. Cust. Appls., 475; T. D. 32227), which decision is approved.

According to the views above expressed the decision of the board should be *affirmed.*