(C. D. 206)

B. A. McKenzie & Co., Inc. v. United States

United States Customs Court, Second Division

(Decided August 28, 1939)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney, and *Joseph A. Howard, Jr.*, junior attorney), for the defendant.

Dallinger, Judge: This is a suit against the United States, arising at the port of Tacoma, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of metal articles. Duty was levied thereon at the rate of 30 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of machine tools. It is claimed that said articles are properly dutiable at the rate of 20 per centum ad valorem under paragraph 327 of said act, the pertinent provision in which reads:

\* \* \* castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts \* \* \*.

It is alternatively claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372 as parts of machines not specially provided for.

The plaintiff offered in evidence the testimony of two witnesses. No evidence was offered by the Government.

The first witness, Edgar E. Rembaugh, examiner of merchandise and acting appraiser at the port of Tacoma, testified that he had passed the merchandise herein; that in his final advisory classification he described said merchandise as parts of machine tools; and that it was so classified by the collector at the rate of 30 per centum ad valorem under said paragraph 372.

The second witness, A. J. Healy, superintendent of manufacture of Spear & Jackson, Inc., of Tacoma, Wash., the ultimate consignee and importer herein, testified that he saw the merchandise when it arrived from Spear & Jackson, Ltd., of Vancouver, British Columbia; that it is represented by the first 22 items, marked "C. I." on the invoice herein; that there were also included in the importation articles represented by the two items described in the invoice as "bronze clutch" and "bronze clutch arm."

At this juncture counsel for the plaintiff formally abandoned all claims relating to said last two items.

The witness then testified that the articles represented by the first twenty-two items on the invoice consisted of cast-iron castings from which a particular machine was to be made; that as imported said castings were in the condition in which they left the foundry, no further work having been applied thereto; that all machine work on said castings was performed after importation; that each piece required the application thereto of some machine work before it was ready to be assembled as a part of the machine; that this work was done by the Cast Iron and Machine Works of Tacoma, Wash. (as shown by

a receipted bill in evidence herein as Exhibit 1); that after such work was done the different parts were assembled as parts of a machine for grinding saw plates; that in the machine there is a frame on which a 72-inch grindstone turns, and another frame which supports the saw plate to be ground at right angles to the grindstone; that said machine grinds circular saws of any diameter up to 100 inches; that the mechanism is operated by other than hand power; and that saw-grinding is the sole function of said machine.

On cross-examination the witness testified that he did not see any of the articles represented by said first 22 invoice items manufactured; that the first of said items, known as the "main bed," was still a casting after being assembled in the machine; that all of the said 22 items were still castings, although used as parts of a particular machine, in that they were made of cast iron; that each of said parts would be a machine casting; and that all of said articles when they arrived in the United States were rough iron castings.

Upon this record counsel for the plaintiff in their brief filed herein contend that the imported merchandise, in the condition in which it arrived, consisted merely of rough castings not made up into articles or parts thereof, and that they are therefore properly dutiable under said paragraph 327. In support of such contention they cite three decisions. The first, in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, wherein was involved the question of the tariff classification of certain merchandise claimed to be properly dutiable under paragraph 125 of the Tariff Act of 1913. But it appears that while that paragraph contained the words "not made up into articles" they were not followed by "or parts thereof," as in the present paragraph 327 of the act of 1930. The same is true of the second cited decision, in *United States* v. *Grinnell Co.*, 16 Ct. Cust. Appls. 255, T. D. 42844, which also arose under the act of 1913.

The third decision (in *C. J. Tower & Sons* v. *United States*, T. D. 39929–G. A. 8720, 44 Treas. Dec. 384), instead of supporting the contention of the plaintiff, in our opinion, would seem to confirm the correctness of the classification of the collector. That case involved the question of the dutiable classification of certain cast-iron radiator sections which, as in the present case, were entered as rough castings, and were claimed by the importers to be properly dutiable at the rate of 20 per centum ad valorem under the following provision in paragraph 327 of the Tariff Act of 1922, which is identical with that appearing in paragraph 327 of the Tariff Act of 1930:

* * * all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts * * *.

In holding that the provision in paragraph 327 of the act of 1922 did not apply to said radiator sections, the court in the last-cited case called attention to the fact that the Tariff Acts of 1909 and 1913 did not contain the words "or parts thereof," which rendered the decisions made under prior tariff acts inapplicable to the merchandise involved in the last-cited case.

It is a well-settled principle of customs law that where a material has been so advanced in manufacture as to have reached the stage in which it is clearly incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article, where the article is in fact such a part. *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. 231, T. D. 43669.

For instance, in *Redden & Martin* v. *United States*, 5 Ct. Cust. Appls. 485, T. D. 35147, the appellate court had before it the question of the proper classification of certain scissors forgings. Duty had been levied thereon under the provision in paragraph 152 of the Tariff Act of 1909 for "scissors and shears, and blades for the same, finished or unfinished." It was claimed that the articles were properly dutiable under paragraph 123 of said act as "Forgings of iron or steel, * * * but not machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process."

In sustaining the classification of the collector and excluding such forgings from said paragraph 123 (which paragraph is analogous to paragraph 327 of the Tariff Act of 1930), the appellate court said:

The articles in question are made from tool steel by the process of stamping and forging, they being cleaned of the surplus metal left adhering to them after that operation. They are uniform in size and dimensions and bear in a crude way the form and appearance of unfinished scissors blades. They are not yet punched with the necessary pivot holes, nor are they true to one another, nor are they tempered, sharpened, nickel plated, colored, or polished. Nevertheless, they have been brought into a condition where their only practical commercial use or purpose is to be finished into perfect scissors blades, and this, of course, is the use for which they are designed. The complete finishing of the present articles into scissors blades requires many processes; these are said to number about 56 in all * * *.

Although the merchandise there passed on was made by the forging process and was in the nature of rough forgings, the instant articles are analogous thereto in that they are alleged to consist of rough castings. There, as here, the forgings and castings, respectively, were in definite forms and shapes with distinctive names (the invoice descriptions of the present castings being corroborated by uncontradicted testimony), which latter forms and shapes are dedicated to the sole use of parts of a saw-grinding machine which is operated by

other than hand power and which employs a tool, to wit, a grindstone, for work upon metal, namely, circular saw plates.

Upon the established facts and the law applicable thereto we hold the articles represented by the first 22 items on the invoice herein to be properly dutiable at the rate of 30 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of a machine tool, as that term is defined therein, as classified by the collector. All claims of the plaintiff are therefore overruled and judgment will be rendered accordingly.