DULIEN STEEL PRODUCTS, INC., ET AL., v. UNITED STATES (No. 4289)[1]

[1] C. A. D. 102.

286

United States Court of Customs and Patent Appeals, February 5, 1940

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellants.
*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney, of counsel), for the United States.

[Oral argument December 12, 1939, by Mr. George R. Tuttle and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Appellants brought suit against the United States in the United States Customs Court to recover certain customs duties alleged to have been erroneously exacted by the Collector of Customs at the port of Seattle, Washington, upon an importation of certain cast malleable-iron pipe couplings or fittings imported from Japan.

Duty was levied upon the importation at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as "Articles or wares not specially provided for * * * composed wholly or in chief value of iron * * * or other metal * * *." It was claimed by appellants that the merchandise was properly dutiable either at the rate of 20 or 25 per centum ad valorem under paragraph 327 of the said tariff act.

At the trial which was held in the city of Seattle, the claim for the 25 per centum duty was abandoned and the case was tried on the issue raised by the allegation that the imported goods were properly dutiable at the rate of 20 per centum ad valorem under the italicized portion of paragraph 327 of the said act reading as follows:

Cast-iron pipe of every description, and cast-iron fittings for cast-iron pipe, 25 per centum ad valorem; cast-iron andirons, plates, stove plates, sadirons, tailors' irons, hatters' irons, but not including electric irons, *and castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been* chiseled, drilled, machined, or otherwise *advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof*, or finished machine parts; castings of malleable iron not specially provided for; cast hollow ware, coated, glazed, or tinned, but not including enameled ware and hollow ware containing electrical elements, 20 per centum ad valorem; molders' patterns, of whatever material composed, for the manufacture of castings, 50 per centum ad valorem.   [Italics supplied.]

Both parties offered testimony and after the case was duly submitted the court rendered judgment in favor of the defendant, overruling the protest. From the judgment this appeal was taken.

There is no dispute as to the facts herein. The merchandise consists of various sizes of cast malleable-iron threaded couplings, sleeves, or fittings which are used to connect lengths of piping for gas, water, air, or steam. The goods have no other use.

The record shows that in order to produce the merchandise a sand mold is made from a pattern and molten iron poured into the mold. The mold is broken after the metal has cooled and the resultant casting is placed in a "tumbler" for cleaning and knocking off the rough spots. The rough spots not removed by the tumbling process are ground off. Then the casting is placed in an annealing furnace and kept at a high temperature for about 72 hours, and allowed to cool slowly. After the annealing process the castings are "malleable," that is, tough and capable of being wrought. Thereafter the articles are chamfered on the ends and threaded.

The sole issue before us is whether or not the processes of annealing, chamfering, and threading, as aforesaid, remove the imported merchandise for classification purposes from the claimed provisions of paragraph 327.

Appellants contend that the merchandise is specifically provided for by being included in:

* * * all castings of iron * * * which have been * * * advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof * * *.

The goods herein were castings of iron when they came from the molds. After undergoing tumbling and grinding processes they were iron castings advanced in condition. After annealing they became castings of malleable iron. After chamfering and threading they were castings of malleable iron advanced in condition to the point of becoming malleable-iron fittings or couplings ready for use as aforesaid.

We take judicial notice of the fact that castings of malleable iron are not produced merely by casting iron in molds. In order to make castings of malleable iron it is necessary that iron castings be put through the annealing process as aforesaid. This is conceded by the appellants, and is borne out by dictionaries and technical publications. See the definitions of "cast iron" and "malleable iron" found under the word "iron" in Funk and Wagnall's New Standard Dictionary; "The Making, Shaping and Treating of Steel," by the Carnegie Steel Company Bureau of Instruction, fourth edition, pp. 254 and 255; the definition of "malleable castings" in Hawkins' Mechanical Dictionary, p. 345; the definition of "malleable cast iron" given in Lockwood's Dictionary of Mechanical and Engineering Terms, p. 219; and, "malleable cast-iron" in the Encyclopedia Britannica, 14th edition, Vol. 5, p. 2.

Congress distinguished between castings of iron further advanced and castings of malleable iron not specially provided for, in the provisions of paragraph 327. It is clear to us that in the absence of this distinction the merchandise here would be properly classifiable under that part of the paragraph claimed by the appellants, as aforesaid. In view of this distinction made by Congress, we fail to see how the goods herein could be properly classifiable as claimed.

Appellants urge that their contention is supported by the decision in *United States* v. *Grinnel Co.*, 16 Ct. Cust. Appls. 255, T. D. 42844. This case might prove to be a proper precedent in deciding the instant appeal if the facts in that case were comparable to those of the instant case. In that case it is stated in the opinion that the merchandise consisted of various cast-iron pipe fittings such as tees, elbows, joints, etc., which, after being cast, were threaded in order to be used for connecting pipes. The collector had classified and assessed the merchandise under paragraph 167 of the tariff act of Oct. 3, 1913, as a manufacture of metal not specially provided for. The importer claimed the merchandise to be dutiable under paragraph 125 of the same act as castings of iron which had been machined or otherwise advanced by processes subsequent to the casting process.

It will be noted in that case that the merchandise consisted of cast-iron pipe fittings. No such fact appears herein. On the contrary, the fittings here are conceded to be cast malleable-iron fittings. Therefore, it is clear that the issue in that case was not the same as the issue here, and because of the difference in facts and the issue involved the *Grinnel* case, *supra*, cannot be considered as sustaining appellants' claim herein.

Counsel has also cited the cases of *United States* v. *Leigh & Butler*, 4 Ct. Cust. Appls. 304, T. D. 33517; *United States* v. *Durbrow & Hearne Mfg. Co.*, 5 Ct. Cust. Appls. 410, T. D. 34940; and *Watson, Geach & Co. (Inc.)* v. *York Metal & Alloys Co.*, 15 Ct. Cust. Appls. 449, T. D. 42112. The first two of the last mentioned decisions concerned cast-iron merchandise, while the third concerned the proper classification of "tungsten steel scrap." The facts in all of these cases are so distinctly different from those in the instant case that it is not necessary to discuss them, as they clearly lend no support to the contention of the appellants.

We cannot, therefore, agree with appellants that the imported articles are specially provided for in paragraph 327; and for the reasons set forth herein the judgment appealed from is *affirmed*.