(C. D. 1152)

THE SINGER MANUFACTURING COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided January 25, 1949)

*Winthrop, Stimson, Putnam & Roberts* (*G. S. Tarbell, Jr.*, of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE and TILSON, Judges; RAO, J., not participating

LAWRENCE, Judge: This controversy arises out of the action of the collector of customs in classifying certain iron castings imported in a rough, unmachined condition as parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, and imposing duty thereon accordingly at the rate of 27½ per centum ad valorem.

Plaintiff has challenged the decision of the collector by protest and claims that the merchandise is dutiable at 10 per centum ad valorem pursuant to the terms of paragraph 327 of said act, as modified by the trade agreement between the United States and Canada, effective January 1, 1939, 74 Treas. Dec. 235, T. D. 49752, which reads in part as follows, the pertinent language being stressed:

Cast-iron andirons, plates, stove plates, sadirons, tailors' irons, hatters' irons, but not including electric irons, and *castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts.*

It is not disputed that the articles in their imported condition were rough, unmachined, and unfinished castings, which, after processing by machining and finishing in this country, are used in power-transmitting mechanisms commonly known as power tables for driving industrial sewing machines.

There being no dispute as to the identity, character, or ultimate use of the castings, we feel that it would serve no useful purpose to here set forth an analysis of the testimony or other factual data. The case resolves itself into a plain and clear-cut question of law.

It is the contention of the Government, as expressed in its brief, that the articles "have been so advanced in manufacture that they have reached the stage where they are clearly incapable of being made into more than one article, to wit, parts of power tables," and that consequently they were properly classified as parts of machines, not specially provided for.

Plaintiff contends that the articles are definitely provided for as castings of iron of the kind described in paragraph 327, as modified, *supra,* and are dutiable accordingly.

In approaching this case, we are confronted with an apparent conflict of decisions by this court regarding the scope and application of paragraph 327, *supra.*

In *B. A. McKenzie & Co., Inc.* v. *United States,* 3 Cust. Ct. 72, C. D. 206, it appears that certain rough iron castings were classified for duty as parts of machine tools in paragraph 372 of the Tariff Act of 1930. The importer claimed that the articles should have been classified as castings of iron within the provisions of paragraph 327 of said act, as in the case before us.

In holding that the castings were unfinished parts of machine tools and dutiable accordingly pursuant to the terms of paragraph 372, *supra*, the court applied the "* * * well-settled principle of customs law that where a material has been so advanced in manufacture as to have reached the stage in which it is clearly incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article, where the article is in fact such a part," citing *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669.

We fully agree with the appellate court in its statement in the *Schenkers* case, *supra*, that—

* * * We think this naked principle of law thus stated is sound, but is it applicable in the instant case?

We do not believe that the castings before us come within the well-settled principle above announced. While it may be true that they bear the earmarks of their intended use, they nevertheless have not, in any proper sense, been "advanced in manufacture" but have merely reached their first estate as crude castings of iron. We deem it of no particular significance that the various castings bear indications of their ultimate use for the simple reason that so far as we are informed substantially all castings of iron are fabricated from predetermined patterns which naturally suggest their intended use.

Moreover, the connotation of that portion of paragraph 327, *supra*, with which we are particularly concerned, is very persuasive in establishing the proper classification of these castings in that paragraph. There appears first a provision for—

castings * * * of cast iron * * *

and this is supplemented by the following words of extension:

including all castings of iron * * * which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts.

The phraseology of the second portion of the paragraph above quoted clearly indicates that the first phrase quoted was intended to embrace castings as they first arrive in commerce in their crude state. Otherwise it would have been unnecessary for Congress to have extended the provision to include castings of iron which have been processed by the various operations specified in the paragraph subsequent to the casting process, provided they were "not made up into articles, or parts thereof, or finished machine parts."

The use of the words "finished machine parts" clearly implies that castings of iron which might be regarded as unfinished machine parts

(provided that they were not made up into articles or parts thereof) were within the paragraph.

The phrase above quoted "not made up into articles," has been interpreted by the courts and, as directly in point, we quote from *United States* v. *Leigh & Butler*, 4 Ct. Cust. Appls. 304, T. D. 33517, which related to iron castings, as follows:

> It thus appears that the verb "to make up" invariably expresses a process of aggregating or assembling different units into a composite entirety. Correspondingly it may be assumed that a made-up article is one which has been thus composed by uniting together various parts. This also is the meaning given by common acceptation to the term. For example, a made-up train is an assembled train composed of various cars. On the other hand a single pulley, gear, or lever ordinarily would not be called a made-up article. This definition of the controlling term strongly tends to sustain the contention of the importers and leads to the conclusion that the term "made up into articles," appearing in paragraph 147 [the castings provision in the Tariff Act of 1909], does not apply to separate parts like those at bar not usable of themselves and not fitted or combined into an assembled article.

See also *Simon, Buhler & Baumann* (*Inc.*) v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537.

There would seem to be no escape, therefore, from the conclusion that the articles which form the subject of this controversy are not subject to classification as parts of machines, *not specially provided for*, in paragraph 372, *supra*, but that they are specifically provided for in paragraph 327, *supra*, as castings of iron. The provisions in paragraph 327 with which we are here concerned are couched in plain terms, free from ambiguity and uncertainty, and we have no hesitation in holding that the castings involved in this proceeding are therein provided for, it being established that they have not been advanced in condition subsequent to the casting process to the point where they have been "made up into articles or parts thereof," as above construed, or into "finished machine parts."

It will be observed that while paragraph 372, *supra*, provides for machine parts, *not specially provided for*, Congress was careful in its use of terms in paragraph 327, *supra*, to exclude therefrom machine parts only if finished, whereas the castings before us are unfinished.

Upon the record before us, to adopt the reasoning of the Government would result in emasculating and rendering inoperative the provisions for iron castings in said paragraph 327.

For the reasons above stated, and upon more mature deliberation, it is our considered opinion that the court erred in the *McKenzie* case, *supra*, in holding that the rough iron castings there before it were excluded from paragraph 327, *supra*.

In the case of *Herbert Morris* (*Inc.*) *et al.* v. *United States*, 51 Treas. Dec. 1135, Abstract 2336, the merchandise before the court likewise

consisted of rough, unmachined castings. There, the court was clearly of the opinion that the castings which it stated had not been advanced to the point where they were parts of articles were dutiable in paragraph 327 of the Tariff Act of 1922 (which, so far as it pertains to castings, was in the identical language of paragraph 327 of the present act), rather than as parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1922, as classified by the collector.

The decision in the *Morris* case, *supra*, was rendered in 1927, and it must be presumed that Congress re-enacted the provision for castings in the Tariff Act of 1930 with knowledge of the construction which had been placed upon it by the court. This amounts to legislative approval of judicial interpretation, and as was stated by our appellate court in *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, at p. 414—

This and other courts, in many cases, have given controlling effect to the doctrine that the legislature is presumed to have approved of judicial interpretations of tariff legislative provisions by the subsequent reenactment of the same or substantially the same language. *United States* v. *Baruch*, 223 U. S. 191; *Latimer* v. *United States*, 223 U. S. 501; *United States* v. *Ascher & Co.*, 11 Ct. Cust. Appls. 453, T. D. 39532; *United States* v. *Yuen et al.*, 11 Ct. Cust. Appls. 479, T. D. 39571; *Grauert Co.* v. *United States*, 11 Ct. Cust. Appls. 495, T. D. 39632; *Wanamaker* v. *United States*, 13 Ct. Cust. Appls. 93, T. D. 40939; *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941; *United States* v. *Beierle*, *supra* [1 Ct. Cust. Appls. 457, T. D. 31506]; *United States* v. *Post & Co.*, 3 Ct. Cust. Appls. 260, T. D. 32568; *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T. D. 42184; *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T. D. 42214; *United States* v. *Lilly & Co. et al.*, 14 Ct. Cust. Appls. 332, T. D. 41970.

Other cases cited by counsel herein differ in certain factual and legal aspects from the case before us and render those decisions inapplicable and unnecessary of discussion here.

In view of the foregoing considerations, we hold as matter of law that the rough, unmachined castings of iron covered by the entries accompanying the protest in this case, which were assessed for duty at the rate of 27½ per centum ad valorem as parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, are properly dutiable at the rate of 10 per centum ad valorem as castings of iron in paragraph 327 of said act, as modified by the trade agreement between the United States and Canada, *supra*. Insofar as this decision may be deemed to be in conflict with the conclusion reached in the *McKenzie* case, *supra*, that case is in effect overruled.

Therefore, the claim of the plaintiff herein is sustained and the decision of the collector of customs is reversed.

Judgment will issue accordingly.