UNITED STATES *v.* THE SINGER MANUFACTURING COMPANY (No. 4619)[1]

[1] C. A. D. 427.

United States Court of Customs and Patent Appeals, February 2, 1950

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.

*Winthrop, Stimson, Putnam & Roberts* (*Arthur E. Pettit* and *Curtis B. Kellar* of counsel) for appellee.

[Oral argument December 8, 1949, by Mr. Donohue and Mr. Kellar]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, rendered pursuant to its decision, C. D. 1152 (22 Cust. Ct. 21), sustaining the protest of the importer, appellee, 130348–K/1856, in which it was claimed that the involved articles, imported as "Rough Unmachined Castings (Cast Iron)," were properly dutiable at 10 per centum ad valorem pursuant to paragraph 327 of the Tariff Act of 1930, 19 U. S. C. 1001, Par. 327, as modified by the trade agreement, 19 U. S. C. 1351, between the United States and Canada, 53 Stat. 2348, 2381 (1938), T. D. 49752, rather than as "parts of machines, not specially provided for" as assessed by the collector at the port of Ogdensburg, New York, at 27½ per centum ad valorem, under paragraph 372 of the Tariff Act of 1930, 19 U. S. C. 1001, Par. 372. The pertinent parts of the Tariff Act of 1930 provide as follows:

Par. 327. [As modified by the trade agreement with Canada] Cast-iron andirons, plates, stove plates, sadirons, tailors' irons hatters' irons, but not including electric irons, and castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts_____10% ad val.

Par. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided,* That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: * * *

The appellee presented the testimony of three witnesses and introduced in evidence samples of the articles as imported and samples of them in the condition in which they were finished after importation. The Government offered no testimony.

The undisputed testimony is that the imported merchandise consists of rough, unmachined castings of iron with nothing done to them after the foundry work except the tumbling, grinding, and sandblasting, which simply consists of taking the sand off the castings and removing any burrs or projections; that none of the castings have been machined, drilled, or otherwise advanced in condition or in value before importation; and that none of the castings in their imported condition could be used as a part of a power transmitter or power table which was their intended use in their finished condition; also, that none of the castings could be used in their imported condition for any commercial use as a made-up article or as a part of a made-up article, or as finished machine parts; and that the castings were of such form and shape that their only use was to be made into parts for a power transmitter or power table after essential additional work was done including milling, drilling, facing, tapping, boring, reaming, counter-boring, japanning, grooving, grinding, and assembling.

There being no dispute as to the facts, the case resolves itself solely into a question of law.

The Government contends that the involved castings are articles or parts of articles, and therefore excluded from paragraph 327, *supra*, by virtue of the words "but not made up into articles, or parts thereof"; that "where a material has been advanced in manufacture so as to have reached a stage in which it is clearly incapable of being made into more than one article, then it should be held, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article"; that paragraph 327, *supra*, was intended to embrace castings which had not been fabricated to such a point that they were dedicated to a particular use at the time they left the foundry and that the imported castings are properly dutiable as parts of machines, not specially provided for, under paragraph 372, *supra*.

In support of that contention, the Government cites *B. A. McKenzie & Co. Inc.* v. *United States*, 3 Cust. Ct. 72, C. D. 206. In that case, cast iron castings in the condition in which they left the foundry were held to be dedicated to the sole use of being processed into parts of a machine for grinding saw plates and were held to be dutiable under paragraph 372, *supra*, as "parts of a machine tool." The court said, "It is a well-settled principle of customs law that where a material has been so advanced in manufacture as to have reached the stage in which it is clearly incapable of being made into more than one

article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article, where the article is in fact such a part," citing *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669. As was said by this court in the *Schenkers* case, "We think this naked principle of law thus stated is sound, but is it applicable in the instant case?" We do not think the castings here involved come within the principle above announced.

The testimony in the case at bar shows that each of the rough castings is of a particular form and intended for ultimate use as a part of a power transmitter or power table, not however by reason of having been "chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process" but solely because of the pattern in which it was cast.

We doubt if castings of iron are ever made without a predetermined ultimate use which determines the form in which the castings are made. While the castings here involved were cast into form so as to be ultimately used as parts of a power transmitter or power table, they have not been advanced in manufacture after being cast. They were imported in the condition in which they left the foundry, nothing having been done to them after they were cast except the removal of gates, burrs, and other excrescences. Paragraph 327, *supra*, contains a provision for *"castings* and *vessels wholly of cast iron"* which is supplemented by the further provision "including *all castings of iron* or cast-iron plates *which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts."* [Italics added.]

It seems clear to us that the first provision of paragraph 327, *supra*, above referred to, to wit: "castings and vessels wholly of cast iron," covers castings of iron as they first arrive in commerce in their rough cast condition as they come from the foundry, and that the second provision above referred to includes castings of iron which have been "advanced in condition by processes or operations subsequent to the casting process" provided they were "not made up into articles, or parts thereof, or finished machine parts."

The provision for excluding "finished machine parts" convinces us that castings of iron which might be regarded as unfinished machine parts are within the paragraph provided they are not made up into articles or parts thereof.

This case involves the meaning of the phrase "but not made up into articles, or parts thereof" there being no contention that the castings are "finished machine parts." *United States* v. *Leigh & Butler*, 4 Ct. Cust. Appls. 304, T. D. 33517, was a case relating to iron castings. In that case the court interpreted the phrase "not made up into articles," as follows:

It thus appears that the verb "to make up" invariably expresses a process of aggregating or assembling different units into a composite entirety. Correspondingly it may be assumed that a made-up article is one which has been thus composed by uniting together various parts. This also is the meaning given by common acceptation to the term. For example, a made-up train is an assembled train composed of various cars. On the other hand, a single pulley, gear, or lever ordinarily would not be called a made-up article. This definition of the controlling term strongly tends to sustain the contention of the importers and leads to the conclusion that the term "made up into articles," appearing in paragraph 147 [the castings provision in the Tariff Act of 1909], does not apply to separate parts like those at bar not usable of themselves and not fitted or combined into an assembled article.

From the above definition, it is clear that the involved castings are not "made up into articles." This leaves the sole question "are they parts thereof?" That is, "are they parts of articles?" Should they be considered for tariff purposes as parts of machines, not specially provided for, or as castings of iron which have been "advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof"?

As above stated, the involved castings are not "finished machine parts" and paragraph 327, *supra*, excludes machine parts from its provisions only if they are "finished machine parts." The provisions of paragraph 372, *supra*, include "parts" of machines, "not specially provided for." The question then is "are the castings specially provided for in some paragraph other than 372?" We think they are specially provided for in paragraph 327, *supra*. They are castings of iron; they have not been advanced in condition subsequent to the casting process so as to be made up into articles, or parts thereof, or into finished parts. An examination of the exhibits (samples of the articles as imported) clearly shows that the castings in their imported condition are not capable of being used as parts of a power transmitter or power table.

We think the case of *Herbert Morris (Inc.) et al.* v. *United States*, 51 Treas. Dec. 1135, Abstract No. 2336, correctly states the law. The merchandise involved in that case was rough, unmachined castings. The court there stated, "The testimony showed that the merchandise is rough castings which have been subjected to no process subsequent to that of casting save the mere removal of the rough edges by chiseling, etc.," and the court held the merchandise dutiable under paragraph 327 of the Tariff Act of 1922, 42 Stat. 858, 879 (1922), which, so far as it pertains to castings, was in the identical language of paragraph 327, of the Tariff Act of 1930, rather than as "parts of machines, not specially provided for" in paragraph 372 of the Tariff Act of 1922.

Counsel for both parties have devoted much space in their briefs to a discussion of the legislative history of the involved paragraphs of the Tariff Act of 1930. As we view those paragraphs, however,

there is nothing uncertain, obscure, or ambiguous about the language of the involved portions of paragraphs 327 or 372, *supra*, and there consequently seems to be no necessity for any recourse to legislative history. *Thorens, Inc.* v. *United States*, 31 C. C. P. A. (Customs) 125, C. A. D. 261; *George B. Zaloom* v. *United States*, 21 C. C. P. A. (Customs) 518, T. D. 46972.

We agree, however, with the statement made by the Customs Court in its decision, as follows:

> The decision in the *Morris* case, *supra*, was rendered in 1927, and it must be presumed that Congress reenacted the provision for castings in the Tariff Act of 1930 with knowledge of the construction which had been placed upon it by the court. This amounts to legislative approval of judicial interpretation, and as was stated by our appellate court in *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, at p. 414—
>
>> This and other courts, in many cases, have given controlling effect to the doctrine that the legislature is presumed to have approved of judicial interpretations of tariff legislative provisions by the subsequent reenactment of the same or substantially the same language. (Citing cases).

We have given careful consideration to the Government's brief, the cases cited therein (which cases differ in factual aspects from the case at bar and which involve statutes not here involved) and to the argument presented by counsel for the Government, but are of the opinion that the castings in the case at bar are properly dutiable at the rate of 10 per centum ad valorem as castings of iron as provided for in paragraph 327 of the Tariff Act of 1930, as modified by the trade agreement with Canada, *supra*. Insofar as this decision is in conflict with the conclusion reached in the *B. A. McKenzie & Co.* case, *supra*, that case is overruled.

The judgment of the Customs Court is *affirmed*.

By reason of illness, HATFIELD, Judge, did not sit during the argument of this case, and he did not participate in the decision.