## STROUSE, ADLER & CO. *v*. UNITED STATES (No. 834).[1]

1. CONSTRUCTION.

Paragraph 135, tariff act of 1909, is not ambiguous in respect to the issue here presented and it is unnecessary to go beyond its express terms to fix its meaning.

2. STEEL STRIPS IN COILS.

That paragraph exhibits certain well-defined changes from previous enactments that dealt with the same subject matter and it is not to be construed according to the practice of the customs or the decisions of law controlling the first enactment. The paragraph in the new statute provides for a duty of 35 per cent ad valorem on "steel strips, not thicker than number fifteen wire gauge, and not exceeding five inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced." These terms apply to the importation with precision and it was dutiable under that paragraph.

### United States Court of Customs Appeals, April 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27214 (T. D. 32046).

[Affirmed.]

*Walter Evans Hampton* for appellants.

*William L. Wemple*, Assistant Attorney General (*Martin T. Baldwin*, special attorney of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case is Bessemer cold-rolled steel, imported in 1910 for use as material in the manufacture of

---

corset clasps and steels. The imported metals are 3 inches in width and vary from 0.022 to 0.027 in thickness; they come in coils about 60 feet long.

The collector placed the importation under the classification contained in paragraph 135, for "steel in strips, not thicker than number fifteen wire gauge and not exceeding five inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced"; and accordingly the goods were assessed with duty at the rate of 35 per cent ad valorem.

The appellants duly filed their protest against this assessment, claiming the merchandise to be dutiable as "steel not specially provided for," under the provisions of paragraph 131. The Board of General Appraisers overruled the protest, and appellants now pray for a reversal of that decision.

The material portions of the paragraphs in question are as follows:

131. Steel ingots, cogged ingots, blooms, and slabs, by whatever process made; die blocks or blanks; billets and bars and tapered or beveled bars; mill shafting; pressed, sheared, or stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping; hammer molds or swaged steel; gun-barrel molds not in bars; alloys used as substitutes for steel in the manufacture of tools; all descriptions and shapes of dry sand, loam or iron-molded steel castings; sheets and plates and steel not specially provided for in this section, all of the above * * * valued above two and two-tenths cents and not above three cents per pound, eight-tenths of one cent per pound; valued above three cents per pound and not above four cents per pound, one and one-tenth cents per pound. * * *

135. Round iron or steel wire, not smaller than number thirteen wire gauge, one cent per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-fourth cents per pound; smaller than number sixteen wire gauge, one and three-fourths cents per pound: *Provided*, That all the foregoing shal pay duty at not less than thirty-five per centum ad valorem; all wire composed of ironl steel, or other metal except gold or silver, covered with cotton, silk, or other material, corset clasps, corset steels, dress steels, and all flat wires, and steel in strips, not thicker than number fifteen wire gauge and not exceeding five inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced, and all other wire not specially provided for in this section, shall pay a duty of not less than thirty-five per centum ad valorem: * * *

It will be observed that paragraph 135, as above copied, lays a duty of at least 35 per cent ad valorem upon—

steel in strips, not thicker than number fifteen wire gauge, and not exceeding five inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced.

These terms apply to the importation with exact precision. The merchandise is steel in strips; it is not thicker than No. 15 wire gauge; it does not exceed 5 inches in width; it is in lengths; it is in coils; it is rolled. This description of the importation is therefore both apt and specific; indeed it may be said that a more apt or more specific description of these goods is hardly possible without the

**186**　　　3 COURT OF. CUSTOMS APPEALS.

use of proper nouns. It therefore seems clear that paragraph 135 must govern the importation unless very convincing reasons appear in the act to the contrary.

The appellants assign two reasons in support of their contention against an assessment under paragraph 135. In the first place they claim that exactly similar merchandise was imported at frequent intervals under the tariff acts of 1890, 1894, and 1897, and that all the time such merchandise was classified under the paragraphs of those acts which correspond with present paragraph 131, and never under those corresponding with present paragraph 135; and in the second place appellants contend that the steel in question is a "basic material, or material merchandise," for the manufacture in this country of certain finished articles, namely, corset clasps and corset steels, and that the collector's assessment results in levying the same duty upon the material as upon its finished manufactures; this is claimed to be unjust, absurd, and contrary to the protective policy of the tariff act.

In answer to the first contention of appellants it may be said that the competition between the present descriptions never appeared in the same form in any of the preceding tariff acts, inasmuch as the corresponding sections of those acts differed in substantial particulars from present paragraph 135. That paragraph provides for "steel in strips," whereas paragraphs 145 of the act of 1890, 124 of the act of 1894, and 137 of the act of 1897 all provided for "*sheet* steel in strips." This merchandise is not sheet steel nor was it made from sheet steel. The present paragraph omits that qualification from the classification under review, and is therefore substantially different from the earlier paragraphs with which appellant compares it. Furthermore, in paragraphs 124 of the act of 1894 and 137 of the act of 1897 the steel strips named therein were such only as were valued at more than 4 cents per pound. The merchandise at bar is valued at less than 4 cents per pound, and has never exceeded that valuation in any of the years covered by the tariff acts above mentioned. The present paragraph omits the limitation as to value. In view of these differences the former classifications have little relevancy in the present case.

In answer to the second contention of appellants, it may be said that it is not within the province of the court to disregard a plain, certain enactment because of its assumed departure from the general legislative policy of the tariff laws. In cases wherein an enactment is ambiguous resort may be had to such a consideration for the purpose of better apprehending the actual legislative meaning embodied in the disputed enactment, but paragraph 135 is not ambiguous in respect to the present issue, and the court is not, compelled to go beyond its express terms in order to find its meaning.

.Furthermore, it may be said that the collector's assessment does not produce an absurd or unjust result, and does not result in a violation of the legislative policy of encouragement to domestic industries as declared in the tariff act. It is true that paragraph 135 levies the same ad valorem duty upon this imported material as upon imported corset clasps and corset steels in finished condition, but this does not imply that the domestic finished clasps and steels are without protection from the competition of similar foreign articles. Whereas the domestic manufacturer must pay an ad valorem duty upon his imported material, his foreign competitor must pay an equal ad valorem rate of duty upon his finished products, and the dutiable valuation in such case would of course include the value of the "basic material" of which it is composed, as well as the additional cost of its manufacture into finished articles.

The court concludes that the collector's assessment under paragraph 135 was correct, and the decision of the board sustaining the same is *affirmed.*