## SCHLOSS CO. *v.* UNITED STATES (No. 917).[1]

COVERED WIRE ARTICLES IN CHIEF VALUE OF SILK.

The merchandise consists of collar supporters made of a thin steel silk-covered wire bent into a series of open loops, with the ends of the wire bent back and soldered so as to form a closed loop at each end of the article. Paragraph 135, tariff act of 1909, contains no provision fixing a primary rate of duty upon silk-covered wire, though the purpose is clear to fix a minimum rate on covered wire. The commodity falls directly within the provisions of paragraph 403 of that act as manufactures of silk not specially provided for.—Strouse, Adler & Co. *v.* United States (3 Ct. Cust. Appls , 184; T. D. 32466) distinguished.

## United States Court of Customs Appeals, December 16, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7352 (T. D. 32421). [Affirmed.] ·

*Churchill & Marlow* (*William A. Hines* of counsel) for appellant.

*William L. Wemple*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise the subject of this appeal consists of collar supporters made of a thin steel silk-covered wire bent into a series of open loops, with the ends of the wire bent back and soldered so as to form a closed loop at each end of the article. The articles are in two sizes, $2\frac{1}{2}$ and $3\frac{1}{2}$ inches in length, and are used as supports for ladies' collars, being intended to be sewn on the inside of the collar within its circumference for the purpose of keeping the collar upright.

Assessment was made under paragraph 403 of the act of 1909 as manufactures of silk not specially provided for, the evidence disclosing that the importation is silk in chief value. On behalf of the importer it is claimed that the merchandise is properly dutiable at 35 per cent ad valorem, or at such rate plus 1 cent per pound, or at 40 per cent ad valorem under paragraph 135, which reads as follows:

Round iron or steel wire, not smaller than number thirteen wire gauge, one cent per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-fourth cents per pound; smaller than number sixteen wire gauge, one and three-fourths cents per pound: *Provided*, That all the foregoing shall pay duty at not less than thirty-five per centum ad valorem; all wire composed of iron, steel, or other metal except gold or silver, covered with cotton, silk, or other material, corset clasps, corset steels, dress steels, and all flat wires, and steel in strips, not thicker than number fifteen wire gauge and not exceeding five inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced, and all other wire not specially provided for in this section, shall pay a duty of not less than thirty-five per centum ad valorem; on iron or steel wire coated by dipping, galvanizing or similar process with zinc, tin, or other metal, there shall be paid two-tenths of one cent per pound in addition to the rate imposed on the wire of which it is made: *Provided further*, That articles manufactured wholly or in chief value of any wire or wires provided for in this paragraph shall pay the maximum rate of duty imposed in this section upon any wire

---

used in the manufacture of such articles and in addition thereto one cent per pound: *And provided further*, That no article made from or composed of wire shall pay a less rate of duty than forty per centum ad valorem. * * *

It will be noted that the first clause of this paragraph imposes a specific rate of duty upon round iron or steel wire varying according to gauge, and this is followed by a proviso that this specific rate shall not be less than 35 per cent ad valorem. The proviso then proceeds, "all wire composed of iron, steel, or other metal except gold or silver, covered with cotton, silk, or other material * * * shall pay a duty of not less than thirty-five per centum ad valorem." This proviso would seem clearly to differentiate between plain, round iron or steel wire of not less than 15 wire gauge and wire composed of iron or steel or other metal covered with cotton, silk, or other material. In either case the tariff term employed is "wire" and the basic material used is wire. In the first portion of the paragraph it is round iron or steel wire of a certain gauge; in the proviso it is wire covered with cotton, silk, or other material. Two classes of wire are therefore provided for in this paragraph.

This is followed by a second proviso that—

Articles manufactured wholly or in chief value of any wire or wires provided for in this paragraph shall pay the maximum rate of duty imposed in this section upon any wire used in the manufacture of such articles and in addition thereto one cent per pound: *And provided further*, That no article made from or composed of wire shall pay a less rate of duty than forty per centum ad valorem. * * *

With the exception of the proviso next to the last quoted, there is no maximum rate fixed for covered wire, but all the way through the paragraph the purpose appears to fix a minimum rate.

The board found that the paragraph contains no provision fixing a rate of duty upon silk-covered wire, and in this view we concur. This being so, resort is to be had to other paragraphs of the act to ascertain the rate, and the commodity falls directly within the provisions of paragraph 403 as manufactures of silk not specially provided for.

It is suggested for the Government that the board might have gone further and have imposed an additional rate of 1 cent per pound under the proviso that "articles manufactured wholly or in chief value of any wire or wires provided for in this paragraph shall pay the maximum rate of duty imposed in this section upon any wire used in the manufacture of such articles and in addition thereto one cent per pound." We think, however, that this proviso is not open to that construction. The proviso is evidently aimed at articles manufactured from wire upon which a duty is imposed as wire, and not designed to increase the rate upon manufactured articles when such articles are found to be dutiable under other paragraphs of the act. The rate fixed by the collector is therefore held the correct one.

The importer cites and relies upon the case of Strouse, Adler & Co. *v.* United States (3 Ct. Cust. Appls., 184; T. D. 32466), which dealt with steel in strips, and it is claimed that the court treated the first

proviso of paragraph 135 as affirmatively imposing a duty upon steel in strips, and it is contended that the decision of the board is in conflict with the holding in that case. When the question involved in that case is understood, it will be seen that the decision in no way conflicts with the ruling in the present case or the decision here pronounced. That case presented a contest between paragraph 131 fixing a specific rate upon steel and the proviso of paragraph 135, which provided for a minimum rate upon the articles which were the subject of that controversy. The language employed in that case must be understood as having reference to the issue there presented. It was said, quoting from the provisions of paragraph 135:

These terms apply to the importation with exact precision. The merchandise is steel in strips; it is not thicker than No. 15 wire gauge; it does not exceed 5 inches in width; it is in lengths; it is in coils; it is rolled. This description of the importation is therefore both apt and specific; indeed, it may be said that a more apt or more specific description of these goods is hardly possible without the use of proper nouns. It therefore seems clear that paragraph 135 must govern the importation unless very convincing reasons appear in the act to the contrary.

It was further said, however, at the outset, "it will be observed that paragraph 135, as above copied, lays a duty of at least 35 per cent ad valorem upon steel in strips," etc. It was by reason of this fact, therefore, that paragraph 135 was applied to the case. The case in no way affirms that the primary duty was fixed by paragraph 135. On the contrary, the implication is clear that it was reliance upon the provision for a minimum rate which controlled the decision.

We find no error in the ruling of the board in the present case, and the decision is *affirmed.*