UNITED STATES *v*. BUSH & CO. *et als.* (No. 1164).[1]

ROUND WIRE—SHORTAGE.

The collector called for the weighing of this merchandise, as he had the power to do, and it was accordingly weighed. The weight of the merchandise controlled its dutiable segregation, and classification was necessary to the proper ascertainment thereof. The weigher's return being a necessary official document before the collector at the time of liquidation and the assessment of duty in this case, it is ruled by United States *v*. Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437) ; and the board's conclusion may well be sustained upon the theory of manifest clerical error. Moreover, there was such a shortage or nonimportation here that as to that it was not to be deemed "an importation of merchandise."

United States Court of Customs Appeals, November 28, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31640 (T. D. 33263).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General, for the United States. Submitted on record by appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This is an appeal by the Government from a decision of the Board of General Appraisers sustaining a protest against a decision of the collector of customs at Port Townsend, Wash., alleging shortage or nonimportation. The record is limited, and protestants have filed no brief in this court. There is before the court neither entries nor records of liquidation, and the facts assumed for the purpose of decision are those alleged in the protest and accepted as true by the Government in argument and brief in this court. The importation was one of round wire, covered by a single entry. A portion thereof was held dutiable at a specific and the remainder at an ad valorem rate of duty. The protest alleges a shortage or nonimportation of both classes, and asserts that allowance was duly made by the collector for the shortage of that portion paying a specific rate of duty, but denied for the shortage of that portion paying an ad valorem rate. The shortage was shown by the official weigher's return, which, with the invoice weights, was before the collector at the time of liquidation.

---

[1] Reported in T. D. 33938 (25 Treas. Dec., 562).

The Government in its brief states:

, There was no law or regulation requiring the weights of this wire to be taken. They happened to be taken because this wire was alongside some wire which was weighable. But by no lawful process could the appraiser get those weights. The surveyor has charge of the weighing and receives and keeps the return. The collector is furnished only with a transcript thereof, and the surveyor officially weighs only things dutiable by weight. This wire is dutiable by value.

This statement is unsupported by the law and facts of the particular case. The statutory provision under which assessment was made is that portion of paragraph 135 of the tariff act of 1909, as follows:

135. Round iron or steel wire, not smaller than number thirteen wire gauge, one cent per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-fourth cents per pound; smaller than number sixteen wire gauge, one and three-fourths cents per pound: *Provided,* That all the foregoing shall pay duty at not less than thirty-five per centum ad valorem; * * *.

A reading of this provision of the statute discloses that the ascertainment of the weight of such wire is essential in every case in order to determine the appropriate duty. The ascertainment of whether or not such wire is dutiable at 35 per cent ad valorem is dependent in every instance upon the fact that 1 cent per pound, or $1\frac{1}{4}$ cents per pound, or $1\frac{3}{4}$ cents per pound, is less than 35 per cent ad valorem. In computing duty, therefore, under this provision of law it is essential in every instance to first weigh the merchandise to ascertain the number of pounds gross, the number of pounds tare, and the net, and then calculate whether or not 1 cent per pound, or $1\frac{1}{4}$ cents per pound, or $1\frac{3}{4}$ cents per pound, as the case may be, is greater or less than 35 per cent ad valorem.

The weigher's return and its office as an important one in the liquidation of duties is fixed by statute. (Revised Statutes, sec. 2890, Customs Regulations 1908, article 1491.) The weigher is likewise required to estimate the tare and make return thereof. (Revised Statutes, sec. 2898, Customs Regulations 1908, article 1495.)

This being a case wherein weight enters into the calculation of the rate of duty, the question as to whether or not a weigher's return when made at the request of the collector is in all instances a necessary part of the record or only such in those cases wherein the weight necessarily enters into the estimation of the appropriate rate of duty is unnecessary here of determination. Article 1491 of the Customs Regulations 1908 seems to place it within the power of the collector to call for such in his discretion, and we are unable to find any limitation upon this power in the pertinent provisions of the law.

As to the finality of the weigher's return upon collectors, and as to its concluding force as a part of the record in such cases, see an able

discussion in G. A. 5848 (T. D. 25767), wherein also are collected many decisions of high authority upon the subject. See also G. A. 3282 (T. D. 16637) and Wilson *v.* Maxwell (2 Blatch., 316).

In this case the certificate of weight, which includes all of the importation, and which was duly submitted to the collector, sets forth the gross, tare, and net weight of the merchandise in accordance with the provisions of the Revised Statutes and regulations issued thereunder, *supra*, and duties were estimated upon the net weight thereof according to law. (Revised Statutes, sec. 2898.) The importation was included within one invoice and entry, but the certificate of the weigher discloses that in some parts the wire was dutiable at an ad valorem rate and in others at a specific rate. In all cases weight of the merchandise controlled its dutiable segregation and classification, was necessary to the proper ascertainment thereof, and the certificate therefor by transcript or otherwise became and was an essential part of the record in the case before the collector.

Moreover, the proviso of paragraph 135, quoted *supra*, is not strictly a provision levying a rate of duty. The rate applicable is specifically prescribed in the preceding purview, and the proviso performs rather a limiting or regulative office. Schloss Co. *v.* United States (3 Ct. Cust. Appls., 459; T. D. 33038); United States *v.* McCoy Co. *et al.* (4 Ct. Cust. Appls., 396; T. D. 33838).

The board stated:

We think, however, it is clear that the weigher's returns as to the amount of wire should have been received and made the basis of liquidation. If this has not been done we conclude it was an error on the part of the liquidating officer.

The weigher's return, therefore, being a necessary official document before the collector at the time of liquidation herein and the assessment of duty in this case, we think it is ruled by the doctrine of the decision of this court in United States *v.* Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437), and that the conclusion of the board may well be sustained upon the theory of manifest clerical error.

Upon another ground, however, well within the allegations of these protests, the appellees were entitled to relief.

The accepted facts of the case bring it well within the rule as to a shortage or nonimportation. The merchandise was wire. Being of wire such a shortage or nonimportation is not within the exclusive remedy provided for recovery for shortage or nonimportation provided by section 22 of the customs administrative act, which applies only to " fruit or other perishable articles." Houlder *v.* United States (4 Ct. Cust. Appls., 247; T. D. 33480). The remedy offered by protest under section 14 of the act is open to the importer and such a case is made by these protests. United States *v.* Habicht (1 Ct.

Cust. Appls., 53–58; T. D. 31031). The case in that view is one for a shortage or nonimportation of merchandise which is not for that reason deemed " an importation of merchandise " within the tariff laws of the United States. United States *v.* Shallus (2 Ct. Cust. Appls., 332; T. D. 32074).

What was said in Marriott *v.* Brune *et al.* (9 How. (50 U. S.), 619–633) is here applicable:

But much more should duties not be exacted on what was lost or destroyed on its way hither, and which never came into the possession or control of the customhouse officer, and much less into the use of the community.

Something has been urged in argument on the estimate made by the appraisers and the final character attached to it. However that may be, if one was made in this case it could be final only as to the price of the sugar abroad and not as to the quantity or weight reaching this country. The latter is fixed by another class of officers, authorized by law. for that purpose; and if the appraisers undertake to fix it, their action in that respect is *coram non judice* and a nullity.

We are of the opinion that the conclusion reached by the Board of General Appraisers was correct, and that without approving or disapproving the reasoning whereby that conclusion was reached, should be *affirmed.*