(C. D. 654)

▬▬▬▬

NATIONAL TRUSS CO. *v.* UNITED STATES

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

## United States Customs Court, Second Division

(Decided June 24, 1942)

*Tompkins & Tompkins (J. Stuart Tompkins* and *Allerton deC. Tompkins* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh* and *Richard E. FitzGibbon,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at Cincinnati, a subport of the port of Cleveland, brought to recover certain customs duties alleged to have been improperly exacted on particular importations invoiced as "truss springs," and concededly composed of steel. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at but 25 per centum ad valorem under the provision in paragraph 316 (a) of said act, the pertinent provisions of which read as follows:

\* \* \* all steel in strips not thicker than one quarter of one inch and not exceeding sixteen inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced, 25 per centum ad valorem.

At the hearing, held at Cincinnati on October 6, 1939, before Brown, Judge, the plaintiff offered in evidence three representative samples of the merchandise, which were admitted in evidence as collective exhibit 1. No other evidence was offered by either party.

One item in said collective exhibit 1 is approximately 15⅜ inches long, ⁷⁄₁₆ to ½ inch wide and .88 to 1.57 millimeters thick. This item has been painted and lacquered, and has two holes in succession near one end, and a third hole near the other end which contains a threaded bushing apparently of copper or brass. The numerals "5" and "42" have been stamped or die-sunk near one end. Counsel for the plaintiff in their brief filed herein have formally abandoned the protests as to this type of merchandise.

Another item in collective exhibit 1 is approximately 13¼ inches long, ⁷⁄₁₆ to ½ inch wide, and 1.27 to 1.31 millimeters thick. This item has been painted or lacquered and has two holes in succession near one end, and a third hole near the other end. The numerals "3" and "38" have been stamped or die-sunk near one end.

The third item in collective exhibit 1 is approximately 12⅜ inches long, ½ inch wide, and .80 to 1.04 millimeters thick. This item has not been painted or lacquered, but has two holes in succession near one end and a third hole near the other end. The numerals "2" and "38" have been stamped or die-sunk near one end.

Upon this record counsel for the plaintiff, in their brief filed herein, contend that the merchandise at bar comes squarely within the language of said paragraph 316 as "steel in strips not thicker than one-quarter of one inch and not exceeding sixteen inches in width, * * * in short lengths, in coils or otherwise," and cites in support thereof certain dictionary definitions, and the cases of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714; *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022; and *Strouse, Adler & Co.* v. *United States*, 3 Ct. Cust. Appls. 184, T. D. 32466.

However, we are of the opinion that neither the dictionary definitions nor the cited cases have any application to the merchandise at bar.

An examination of the samples in collective exhibit 1 plainly discloses that they are much more than mere strips of steel. From their appearance it would seem that they have been dedicated to some particular use. Such use may well be that of truss springs, as indicated in the invoices. At any rate, they are unquestionably something more than mere material.

In *Boye Needle Co.* v. *United States*, 5 Ct. Cust. Appls. 43, T. D. 34009, the appellate court had before it certain coiled, round, steel wire apparently in the form of springs. It was assessed for duty under paragraph 135 of the Tariff Act of 1909 as "articles manufactured * * * of wire." It was claimed to be properly dutiable under the same paragraph as "wire smaller than number 16 wire gauge." In sustaining the collector's classification the appellate court said:

* * *. The coiling process, however, gives to this wire a new and peculiar character, name, and use. The new article is not "a slender rod, strand, or thread of ductile metal," which is the accepted definition of the word "wire," but is an article permanently and essentially differing therefrom in form. Nor does the new article bear the name of "wire"; it is called coiled wire spring, or coiled wire with a hyphenated signification. The present importation is invoiced as "round coiled spring." The new article has a use as a spring which differs from that of simple wire, and results from the changed form into which the original wire has been permanently converted.

While it is true that paragraph 316 of the Tariff Act of 1930 under which the plaintiff claims does contain a provision for steel strips in coils, it is manifest that the articles constituting the imported merchandise at bar are not merely coiled steel strips. As a matter of

fact, their shape and form are not that of a coil at all. They have definitely the shape of a spring, for which purpose they have been cut to definite lengths, with holes at either end so that they can be secured in place.

Upon the established facts and the law applicable thereto we hold that the merchandise at bar is properly dutiable at the rate of 45 per centum ad valorem under said paragraph 397 as manufactures of metal not specially provided for, as classified by the collector.

All claims of the plaintiff are therefore overruled, and judgment will be rendered accordingly.