(C. D. 1342)

FORD MOTOR COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 5, 1951)

*John A. Moekle* and *Duane D. Freese* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The Ford Motor Company of Detroit, Mich., imported certain cast-iron castings from Canada. They were classified by the collector of customs as parts of automobiles, finished or unfinished, not specially provided for, in paragraph 369 (c) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 369 (c)), and duty was levied thereon at the rate of 25 per centum ad valorem.

Plaintiff relies upon the claim that the castings should be classified in paragraph 327 of said act (19 U. S. C. § 1001, par. 327), as modified by the trade agreement between the United States and Canada, 74 Treas. Dec. 235, T. D. 49752, effective January 1, 1939, which, insofar as material here, reads:

* * * castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts

which are made dutiable at the rate of 10 per centum ad valorem.

It appears from the record that the importation consists (1) of castings which were designed and cast as manifolds, represented by illustrative exhibits 1 and 2, and (2) castings designed and cast as transmission cases, represented by illustrative exhibit 3. The record further discloses that the castings in controversy are wholly of cast iron; are not finished machine parts; are not made to precise measurements—only approximate—and that the surfaces are too rough to serve their use as parts in the equipment of machines.

It appears further from the record that after the castings are cast in molding machines they are cooled, cleaned in a wheelabrator with steel grit, and excess metal is removed by the use of a grinding wheel, which is not regarded as a precision instrument, but is used for snagging or knocking off fins formed in the casting process. In places

where the grinding wheel cannot be availed of, the snagging is accomplished by means of a pneumatic-driven tool known as a chipper. The rough transmission case (illustrative exhibit 3) is the only one of the three types of castings in controversy which had been chiseled before importation. None of the castings had been drilled or machined. While in their imported condition the castings could not be used as parts of machines, they are designed to become eventually manifolds and transmission cases of automobiles or industrial engines after being properly machined.

A case very similar in its legal aspects to the present controversy was before us in *The Singer Manufacturing Company* v. *United States*, 22 Cust. Ct. 21, C. D. 1152. That case is mainly relied upon by plaintiff herein in support of its claim for classification within paragraph 327. The articles in that case were rough, unmachined, and unfinished castings, which, after processing by machining and finishing, were used in power transmission mechanisms known as power tables for driving industrial sewing machines. It was there contended by the Government that the articles had been so advanced in manufacture that they had reached a stage where they were clearly incapable of being made into more than one article—namely, parts of power tables—and that consequently they should be classified as parts of machines within the meaning of paragraph 372 of the Tariff Act of 1930. Plaintiff in that case claimed, as in the case at bar, that the castings should be classified pursuant to the terms of said paragraph 327, as modified by the Canadian Trade Agreement, *supra*. The only difference in the legal phase of the two cases is that whereas in the *Singer* case it was contended by the Government that the rough castings should be classified as parts of machines, not specially provided for, in the present case it contends that the rough castings here in issue should be classified as unfinished parts of automobiles, not specially provided for.

In the *Singer* case we stated that "We deem it of no particular significance that the various castings bear indications of their ultimate use for the simple reason that so far as we are informed substantially all castings of iron are fabricated from predetermined patterns which naturally suggest their intended use." We carefully analyzed that portion of paragraph 327, *supra*, with which we are particularly concerned here, and pointed out that after providing for "castings * * * of cast iron," the following expression is used: "including all castings of iron * * * which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts." We then reasoned as follows:

The phraseology of the second portion of the paragraph above quoted clearly indicates that the first phrase quoted was intended to embrace castings as they first arrive in commerce in their crude state. Otherwise it would have been

unnecessary for Congress to have extended the provision to include castings of iron which have been processed by the various operations specified in the paragraph subsequent to the casting process, provided they were "not made up into articles, or parts thereof, or finished machine parts."

The use of the words "finished machine parts" clearly implies that castings of iron which might be regarded as unfinished machine parts (provided that they were not made up into articles or parts thereof) were within the paragraph.

Our judgment in the *Singer* case, *supra*, was affirmed on appeal (*United States* v. *The Singer Manufacturing Company*, 37 C. C. P. A. (Customs) 104, C. A. D. 427), and the views above expressed were fully approved by the appellate court. In the course of its opinion the court observed:

The provision for excluding "finished machine parts" convinces us that castings of iron which might be regarded as unfinished machine parts are within the paragraph provided they are not made up into articles or parts thereof.

After quoting from the case of *United States* v. *Leigh & Butler*, 4 Ct. Cust. Appls. 304, T. D. 33517, wherein it was stated:

It thus appears that the verb "to make up" invariably expresses a process of aggregating or assembling different units into a composite entirety. Correspondingly it may be assumed that a made-up article is one which has been thus composed by uniting together various parts. * * * the term "made up into articles," appearing in paragraph 147 [the castings provision in the Tariff Act of 1909], does not apply to separate parts like those at bar not usable of themselves and not fitted or combined into an assembled article.

the court said: "From the above definition, it is clear that the involved castings are not 'made up into articles.'" We quote further from the decision of the appellate court as follows:

As above stated, the involved castings are not "finished machine parts" and paragraph 327, *supra*, excludes machine parts from its provisions only if they are "finished machine parts." The provisions of paragraph 372, *supra*, include "parts" of machines, "not specially provided for." The question then is "are the castings specially provided for in some paragraph other than 372?" We think they are specially provided for in paragraph 327, *supra*. They are castings of iron; they have not been advanced in condition subsequent to the casting process so as to be made up into articles, or parts thereof, or into finished parts. * * *

It is conceded by the Government in its brief herein that the imported castings "* * * have not been made up into articles or parts thereof or finished machine parts."

In the case at bar, the competition is between "parts" of automobiles, "finished or unfinished, not specially provided for," and "castings * * * of cast iron, including all castings of iron * * * which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts."

In enumerating parts of automobiles, "finished or unfinished, not

specially provided for," Congress presumably realized that there might be some finished or unfinished parts of automobiles which were otherwise specially provided for, and the castings provision in paragraph 327 is a clear indication that there are certain unfinished parts of automobiles which are specially provided for.

We think the intensive phraseology of the pertinent portions of paragraph 327, *supra*, evinces the purpose of Congress to provide therein for all castings which have been advanced in condition by the processes specified therein but not made up into articles, or parts thereof, or *finished* machine parts. The use of the words "or finished machine parts" in paragraph 327 is a clear indication that unfinished machine parts which otherwise meet the terms of the paragraph should be classified therein.

The Government seeks to distinguish the *Singer* case, insisting that "Said decision is limited to a finding that unfinished parts of any machine in the form of castings, which said machine is within the purview of paragraph 372, is dutiable under paragraph 327, *supra*." In its brief it points to the case of *United States* v. *The J. D. Richardson Company*, 36 C. C. P. A. (Customs) 15, C. A. D. 390, as holding that—

\* \* \* although paragraph 372 of the Tariff Act of 1922 provided for parts, finished or unfinished, of all other machines not specially provided for, paragraph 372 of the Tariff Act of 1930 does not provide for parts of machines in an unfinished condition. The change in the two paragraphs obviously discloses a congressional intent to limit the provision for parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, to those that are in a finished condition.

From this the Government argues that the *Singer* case merely stands for the proposition "that *unfinished machine parts* in the form of castings,—that is, unfinished parts in the form of castings which in a finished condition would be classifiable under paragraph 372, *supra*, as parts of machines, which said machines were classifiable under paragraph 372, *supra*, are within the purview of paragraph 327." It contends, however, that unfinished automobile parts in the form of castings, being more specifically provided for as unfinished automobile parts, are not covered by the principle of the *Singer* case.

We do not so interpret the law. As above indicated, the appellate court was of the opinion in the *Richardson* case, *supra*, that paragraph 372 of the Tariff Act of 1922 provided for parts of machines, "finished or unfinished, not specially provided for," but that in view of the change of language in paragraph 372 of the Tariff Act of 1930, the latter did not provide for parts of machines in an *unfinished* condition. But we do not consider as controlling of the issue in this case or as limiting the scope of the *Singer* case that paragraph 372 of the present act does not encompass unfinished machine parts, whereas paragraph 369 (c), *supra*, provides for automobile parts, finished or unfinished.

In this connection, it is important to consider the case of *Herbert Morris (Inc.) et al.* v. *United States*, 51 Treas. Dec. 1135, Abstract 2336, which arose under the Tariff Act of 1922. The merchandise involved therein consisted of rough, unmachined castings. Despite the fact that paragraph 372 of the Tariff Act of 1922 provided for parts of machines, finished or unfinished, this court held that the castings there involved, which had not been advanced to the point where they were parts of articles, were dutiable in paragraph 327 of the tariff act (which, so far as it pertains to castings, was in the identical language of paragraph 327 of the Tariff Act of 1930) rather than as parts of machines, finished or *unfinished*, not specially provided for, in paragraph 372 of the Tariff Act of 1922.

We pointed out in the *Singer* case, *supra*, that the decision in *Morris* v. *United States* was rendered in 1927, and that it "must be presumed that Congress re-enacted the provision for castings in the Tariff Act of 1930 with knowledge of the construction which had been placed upon it by the court." Further, we said, "This amounts to legislative approval of judicial interpretation," citing *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, at p. 414, reading in part as follows:

This and other courts, in many cases, have given controlling effect to the doctrine that the legislature is presumed to have approved of judicial interpretations of tariff legislative provisions by the subsequent reenactment of the same or substantially the same language. (Citing cases.)

We think the conclusion in the *Morris* case, *supra*, to wit, that the provision for castings was more specific than the provision for unfinished machine parts, insofar as rough, unmachined castings were concerned, applies with equal force to the competing provisions here involved.

The case of *International Harvester Co.* v. *United States*, 45 Treas. Dec. 287, T. D. 40054, cited by the Government in its brief, is inapt since it refers to *finished* castings which as imported were ready to be incorporated as parts of sulky plows.

We have examined the other cases cited by the parties in their briefs herein, but deem it unnecessary to analyze them here.

Based upon the facts in this case, and in harmony with the authorities above discussed, we find and hold that the rough castings which form the subject of this controversy should be classified for duty at the rate of 10 per centum ad valorem in paragraph 327 of the Tariff Act of 1930, as modified by the trade agreement with Canada, *supra*. That claim of plaintiff is therefore sustained, and judgment will be entered accordingly.