The ACME SHEAR CO.

v.

UNITED STATES.

C. D. 4569; Court No. 73-2-00440.

United States Customs Court.

Dec. 2, 1974.

Tompkins & Davidson, New York City (Allan H. Kamnitz, New York City, of counsel), for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (John N. Politis, New York City, trial atty.), for defendant.

*Opinion on Cross-Motions for Summary Judgment*

BOE, Chief Judge:

Plaintiff has moved for summary judgment under rule 8.2 of this court. Defendant, agreeing that no genuine issue of fact exists, has cross-moved for summary judgment in its favor.

From the pleadings and from the testimony submitted by affidavits, it appears that the merchandise in question consists of nonmalleable cast-iron articles not alloyed and not coated or plated with precious metal. The articles, described in the customs invoices as "Grey Iron Castings, Art. 101C," were imported by the plaintiff from West Germany and entered at the port of Bridgeport, Connecticut, on February 25 and July 7, 1971.

Exhibits introduced by the plaintiff (exhibits 1, 2, 3 and 4) and by the defendant (exhibit A) disclose that the imported merchandise in question is castings of good quality bearing a well-defined dedication to a particular use and purpose; that is—blades or parts of scissors. From the affidavits submitted

by the parties, it appears to be undisputed that the articles are rough castings not processed beyond the casting stage, except for cleaning an excess of the metal, referred to as "gate," remaining after molten metal is poured into the mold for the purpose of creating the casting. Accordingly, further processing consisting of numerous other operations is required to be performed by the plaintiff before the imported castings attain the stage of completion as a finished shear blade.

The articles in question were assessed with a duty of 4.5 cents each plus 13 per centum ad valorem under item 650.89 of the Tariff Schedules of the United States, as modified by Presidential Proclamation 3822 (T.D. 68-9), providing:

Schedule 6, Part 3, Subpart E, TSUS

Scissors and shears (except machines and except shears provided for in any of the foregoing provisions), and blades therefor:

\*　　\*　　\*　　\*　　\*　　\*

650.89　　Va'ued over 50 cents but not over $1.75 per dozen ....... 4.5¢ each + 13% ad val.

The plaintiff, however, contends that the articles are subject to a duty at a rate of 0.5 per centum ad valorem under item 657.09 of the Tariff Schedules of the United States, as modified, providing:

Schedule 6, Part 3, Subpart G, TSUS

Subpart G headnotes:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\*　　\*　　\*　　\*　　\*　　\*

Articles of iron or steel, not coated or plated with precious metal:

Cast-iron articles, not alloyed:

657.09　　Not malleable .......... 0.5% ad val.

In support of its contention, the plaintiff submits that the instant case is controlled by the decisions in a series of cases relating to castings and forgings heretofore determined by this court and the Court of Customs and Patent Appeals. United States v. Singer Manufacturing Company, 37 CCPA 104, C.A.D. 427 (1950); Ford Motor Company v. United States, 27 Cust.Ct. 22, C.D. 1342 (1951); United States v. J. Gerber & Co., Inc., et al., 58 CCPA 110, C.A.D. 1013 (1971) and John V. Carr & Son, Inc. v. United States, 66 Cust.Ct. 316, C.D. 4209, 326 F.Supp. 973 (1971).

It will be noted that in the *Singer* case, *supra*, which has been cited repeatedly as authority for the several subsequent decisions relating to "castings" as well as "forgings," the Court of Customs and Patent Appeals viewed as inapplicable the general principle of customs law formerly enunciated in the case of B. A. McKenzie & Co., Inc. v. United States, 3 Cust.Ct. 72, C.D. 206 (1939), i. e.—that material so advanced in manufacture as to cause it to clearly appear that it is incapable of being made into more than one article shall be deemed, even though unfinished, to have been so dedicated to a single use as to find its status as a part of the article. In rejecting the application of this doctrine of "dedication to a single use" as it relates to "rough castings," the court predicated its decision on the provisions of paragraph 327 of the Tariff Act of 1930, 19 U.S.C. § 1001, which provided:

[As modified by the trade agreement with Canada] Castiron andirons, plates, stove plates, sadirons, tailors' irons, hatters' irons, but not including electric irons, *and castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts* ...... 10% ad val. [Emphasis supplied.]

In construing paragraph 327, the court stated (*Id.*, p. 107):

It seems clear to us that the first provision of paragraph 327, *supra*, above referred to, to wit: "castings and vessels wholly of cast iron," covers castings of iron as they first ar-

rive in commerce in their rough cast condition as they come from the foundry and that the second provision above referred to includes castings of iron which have been "advanced in condition by processes or operations subsequent to the casting process" provided they were "not made up into articles, or parts thereof, or finished machine parts."

The provision for excluding "finished machine parts" convinces us that castings of iron which might be regarded as unfinished machine parts are within the paragraph provided they are not made up into articles or parts thereof.

Again, the court continued (*Id.*, p. 108):

\* \* \* they are castings of iron; they have not been advanced in condition subsequent to the casting process so as to be made up into articles, or parts thereof, or into finished parts. \* \* \*

The construction of paragraph 327 of the Tariff Act of 1930 relating to castings, thus adopted in the *Singer* case, has been followed by this court in the case of Ford Motor Company v. United States, 27 Cust.Ct. 22, C.D. 1342 (1951) and in the case of John V. Carr & Son, Inc. v. United States, 66 Cust.Ct. 316, C.D. 4209 (1971).

Were the provisions of paragraph 327 of the Tariff Act of 1930 in effect at the time of the importation of the merchandise in the instant case, this court, indeed, would be reluctant to stray from the decisions afore-cited. However, the provisions of the Tariff Schedules of the United States existing at the time the merchandise in this case entered the United States are materially different. To predicate a decision in the case at bar, therefore, upon prior court decisions, which, in turn, were based upon a tariff provision no longer in existence, would do violence to the congressional intent expressed in the present applicable schedule.

In the revised Tariff Schedules of the United States proposed by the Tariff Commission in its classification study of November 15, 1960, it was provided:

Schedule 6, Part 3, Subpart G

Subpart G headnote:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\* \* \* \* \* \*

657.10      Castings of malleable iron

It is evident from the above schedule that the provisions relating to the classification and description of castings referred to in paragraph 327 of the Tariff Act of 1930 were not only materially changed, but in a great measure deleted. In fact, reference therein was made in item 657.10 only to "castings of malleable iron." Whether the omission of an item relating to "non-malleable castings" was because of inadvertence or was purposeful remains undetermined and unnecessary for the purpose of our present consideration.

However, in the Tariff Classification Study, submitted by the Tariff Commission in its Third Supplemental Report on May 7, 1963 pursuant to section 101 of the Tariff Classification Act of 1962, the following change was provided for with respect to the foregoing schedule:

Substitute the following for item 657.10 (*castings nspf*):

\* \* \* \* \* \*

\* \* \* \* \* \*

Cast-iron articles, not alloyed:

657.09      Not malleable

657.10      Malleable

It will be noted from the foregoing that all references therein to "castings" have been deleted and that in lieu thereof new classifications have been designated in the form of "cast-iron articles, not alloyed, not malleable as well as malleable."

It appears clear to this court, therefore, that in the adoption of item 657.09, Tariff Schedules of the United States, the intended purpose of the Con-

gress was to remove the general preferential low-tariff treatment as it related to "castings" and throughout their successive preliminary stages of processing and to require thereafter the classification of the same under the appropriate existing tariff schedule relating to the finished article to which the merchandise appears to be a part, in conformity with the accompanying interpretative rules.

In those instances where, as a result of the special study by the Tariff Commission, continued preferential low-tariff treatment was deemed appropriate, specific individual tariff schedule items were established.[1]

Again, in other instances specific legislation has been enacted subsequently for the express purpose of restoring to certain articles consisting of unfinished nonmalleable cast-iron parts of machinery, the lower and move favored treatment enjoyed under paragraph 327 of the Tariff Act of 1930.

In connection with the enactment of Public Law 90–638, Senate Report No. 1496 is of particular interest.[2] It is pointed out therein that the purpose of the provision in the proposed legislation relating to nonmalleable iron castings was "to restore to certain unfinished nonmalleable cast-iron parts the tariff rate which was applicable to such parts prior to the effective date of the Tariff Schedules of the United States; that is, August 31, 1963." The nonmalleable cast-iron parts, prior to the adoption of item 662.20, TSUS, had been dutiable under the general provision for cast-iron castings under paragraph 327 of the Tariff Act of 1930.

In its report the Committee stated (*Id.*, p. 4585):

The general provision for cast-iron castings was not continued in the Tar-

iff Schedules of the United States because it was ambiguous in certain respects. In the Tariff Classification Study preceding the adoption of the tariff schedules, the Tariff Commission made a survey to determine the major imports which were being afforded the 3-percent tariff treatment and created special provisions for such cast-iron products in appropriate portions of schedule 6 of the TSUS in order to continue the substance of the past tariff treatment. No special provision was created to cover the aforementioned unfinished parts (other than such parts of machine tools) which are now dutiable under TSUS item 662.20 at 10 percent ad valorem.

Like the Committee on Ways and Means of the House, the Committee on Finance is desirous of restoring the tariff treatment which applied to these castings prior to August 31, 1963. In 1965, Congress restored the tariff treatment which previously applied to rough-iron castings for purification systems and for rollers used in food processing plants. However, it did not deal specifically with rough-iron castings used in bottling or packaging machinery, because it appeared the volume of trade in such castings was insufficient to warrant a special tariff category.

Plaintiff cites United States v. J. Gerber & Co., Inc., et al., 58 CCPA 110, C. A.D. 1013 (1971) in support of its contention that the principle laid down in the *Singer* case, *supra*, continues to be applicable in the construction of item 657.09, TSUS. Contrary to the interpretation sought to be placed thereon by the plaintiff, it would appear that the case, in fact, is illustrative of the differentiation intended by the Congress between item 608.25, TSUS, relating to "forg-

1. See such items as 660.50; 661.92; 662.18; 674.51 and 692.24, Tariff Schedules of the United States, under which lower tariff rates have been provided for specific cast-iron parts. In each item definitive limits re-

lating to the extent of the advancement and processing are included.

2. U.S.Code Congressional and Administrative News, Vol. 3, 90th Cong., 2d Sess., 1968, pp. 4584–4585.

ings" and item 657.09, TSUS, relating to what are now described as "cast-iron articles" adopted in the Tariff Classification Act of 1962. The court in the *Gerber* case held that steel forgings were dutiable under item 608.25, TSUS, providing:

Forgings of iron or steel, not machined,
not tooled, and not otherwise processed
after forging:
608.25      Other    than    alloy    iron    or
            steel .............. 10.5% ad val.

In its decision directing specific attention to the fact that item 608.25, TSUS, varied in no material respect from the provision originally contained in paragraph 319(a) of the Tariff Act of 1930, the court stated:

Plaintiff correctly points out that the Tariff Commission, in formulating the schedules for the 1962 Act, first intended to abandon the old para. 319(a) which provided for:

*forgings of iron or steel—not machined, tooled or otherwise advanced —by any process—subsequent to the forging process* [emphasis supplied]. and to substitute different language, but then changed its mind, and in the Tariff Classification Study, First Supplemental Report, January 1962, Miscellaneous Series TC, recommended the item, 608.25, quoted above, which Congress adopted, and which varies in no material respect from the old para. 319(a). * * * [P. 113]

In view, therefore, of the continuing similarity between item 608.25, TSUS, and the antecedent provisions of paragraph 319(a) of the Tariff Act of 1930, the principle thus first enunciated in the *Singer* case in 1950, although relating to iron castings, properly was reaffirmed.

We fail, however, to note a like similarity continued between item 657.09, TSUS, and the antecedent provisions previously contained in paragraph 327 of the Tariff Act of 1930. In the present tariff schedule the term "cast-

ings" has been omitted. All references to the degree of advancement of the article by subsequent processing as well as to the ultimate advancement to the status of a "finished part" have been deleted. Thus, by the adoption of item 657.-09, TSUS, it would appear that the intention on the part of the Congress manifestly existed to abandon the provisions of paragraph 327 of the Tariff Act of 1930. The change in phraseology and the deletion of definitive provisions relating to the extent of processing subsequent to the original casting process are sufficiently significant so as to require a re-examination by this court. In the case of Volkswagen of America, Inc. v. United States, 68 Cust.Ct. 122, C.D. 4348, 340 F.Supp. 983 (1972), aff'd, 494 F.2d 703, 61 CCPA 41, C.A.D. 1115 (1974), the function and obligation of this court as it relates to statutory construction has been well expressed (*Id.*, p. 130, 340 F.Supp. p. 989):

It is our opinion, however, that "heredity" is not a determinative factor in statutory interpretation, particularly when there has been a change of language. Here there has been an entire rephrasing and restructuring of the statutory provision, a circumstance which always warrants a fresh determination of meaning free of the influence of old decisions, interpretations and administrative practices. Strouse, Adler & Co. v. United States, 3 Ct.Cust.Appls. 184, 186, T.D. 32466 (1912); United States v. New York Cordage Co., 18 CCPA 23, 25, 26, T.D. 43977 (1930); Rice Millers' Association, American Manufacturers v. United States and Oberle (Inc.), 15 Ct. Cust.Appls. 355, 358, T.D. 42560 (1928); Cellas, (Inc.) v. United States, 18 CCPA 237, 241, T.D. 44405 (1930). In any event, the use of a significant new term is more than enough reason to justify a full examination of the new language in its own right.

It is our opinion that item 657.09, TSUS, necessarily must be restricted to a far more limited construction than that formerly applied to paragraph 327 of the Tariff Act of 1930 as it specifically related to rough castings. It therefore appears that its application properly should be limited to those "cast-iron articles" not more specifically provided for in the Tariff Schedules of the United States.

As previously stated herein, we believe that the intent of Congress was apparent in the adoption of item 657.09, TSUS, to require the classification of castings (as distinguished from forgings) under the existing tariff schedules for articles to which they may relate or be a part—unless another classification is otherwise specifically provided for.

In order to implement such congressional intent, full import must be given to General Interpretative Rule 10(h) providing:

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

Although the articles in question in the instant case are admittedly unfinished, their form and appearance constitute unmistakable evidence of a dedication for use as a shear blade and properly are subject to duty as such an article under item 650.89, TSUS.

We are not unmindful of the prior decision of this court in the case of John V. Carr & Son, Inc. v. United States, 66 Cust.Ct. 316, C.D. 4209, 326 F.Supp. 973 (1971). Suffice it to say, that for the reasons hereinbefore set forth, we are unable to concur in the construction which the court therein placed upon item 657.09. TSUS.

The cross-motion of the defendant for summary judgment, accordingly, is granted, and the motion of the plaintiff is denied.

Let judgment be entered accordingly.